IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **CHOICE HOTELS INT'L, INC. &** )<br>**CHOICE HOTELS OWNERS COUNCIL,** )<br> )<br>Petitioners, )<br> )<br>v. )<br> )<br>**JAI SAI BABA LLC,** *et al.*, )<br> )<br>Respondents. )<br> ) | Civil Case No.: GLS 23-146 |

**MEMORANDUM OPINION**

Petitioners Choice Hotels International, Inc. and Choice Hotels Owners Council (collectively "Petitioners" or "Choice") have brought an action against Respondents Jai Sai Baba, LLC, Dipesh Patel, and MDPD13 Investments, LLC (collectively "Respondents"), specifically they seek confirmation of an arbitral award. (ECF No. 1).

Pending before this Court[1] is "Respondents' Motion to Transfer Venue to the United States District Court for the Eastern District Court of Pennsylvania." (ECF No. 15) ("Motion"). The issues have been fully briefed. (*See* ECF Nos. 29, 41). Accordingly, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Motion is **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This case (the "District of Maryland Litigation") traces its origins back to a lawsuit in the United States District Court for the Eastern District of Pennsylvania (the "Eastern District of Pennsylvania Litigation"). *See Jai Sai Baba LLC v. Choice Hotels Int'l, Inc.*, Civ. No. 20-2823,

---

[1] This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 11).

2021 WL 1049994, at *1 (E.D. Pa. Mar. 19, 2021). Therefore, to resolve the Motion, the Court will detail the background of both the Eastern District of Pennsylvania Litigation and the District of Maryland Litigation.

### A. Eastern District of Pennsylvania Litigation

On June 12, 2020, Jai Sai Baba, LLC (Respondents in the instant case) and dozens of other Choice Hotels International, Inc. franchisees filed a complaint against Choice, alleging "violations of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1962(c); the Sherman Act, 15 U.S.C. § 1; the Civil Rights Act, 42 U.S.C. § 1981; various state franchise acts; common law fraud; and breach of contract, including the implied covenant of good faith and fair dealing." (E.D. Pa., ECF No. 1).[2] On July 15, 2020, Jai Sai Baba and the other Eastern District of Pennsylvania plaintiffs filed an amended complaint, in which the causes of action remained the same, but additional plaintiffs were added. (E.D. Pa., ECF No. 6).

On July 29, 2020, Choice filed a motion to compel arbitration. (E.D. Pa., ECF No. 8). In that motion, Choice asserted that the plaintiffs, as hotel franchisees, each signed a "Franchise Agreement," which set forth the terms and conditions of the franchisee-franchisor relationship. (*Id.*, pp. 2-3). Choice contended that the Franchise Agreements included an "Arbitration Provision" that required the plaintiffs to submit to binding arbitration to resolve their dispute(s). (*Id.*).

On March 19, 2021, the Hon. Joseph Leeson, Jr., the U.S. District Judge presiding over the matter, issued an order granting the motion to compel arbitration. (E.D. Pa., ECF No. 14). In finding that the Arbitration Provision required the parties to enter arbitration, Judge Leeson held the following:

---

[2] The Court, when referring to documents and parties in the case of *Jai Sai Baba LLC v. Choice Hotels Int'l, Inc.*, Civ. No. 20-2823, will include the "E.D. Pa." designation.

> Plaintiffs entered into valid, enforceable arbitration agreements with Choice that they admit apply to the claims in the instant action. Because these claims, as they relate to CHOC, also arise from the Franchise Agreements, both Defendants may enforce the agreements to arbitrate. Defendants' Motion to Compel Arbitration and Stay Proceedings is granted.

(E.D. Pa., ECF No. 13, p. 23). Judge Leeson also stayed proceedings and instructed Choice as follows:

> Defendants are to submit a status report to the Court on **the first day of each month, commencing on June 1, 2021, and every other month thereafter**, to report on the status of this case, including but not limited to the dates scheduled for the arbitrations and the outcome of any completed arbitrations.
>
> Within thirty days of the completion of all arbitration proceedings, both parties are directed to notify the Court that the arbitrations have concluded and that the above-captioned action is ready to proceed.

(E.D. Pa., ECF No. 14) (emphasis in original). Accordingly, then, Judge Leeson affirmatively decided against closing the case, opting instead to require that the parties inform him when the case was ready to proceed after the conclusion of arbitration proceedings. (*Id.*).

Thereafter, many of the plaintiffs engaged in arbitration proceedings involving Choice, and Choice provided monthly status reports regarding the outcome of those proceedings. (*See* E.D. Pa., ECF Nos. 15-46, 48).

As is germane to this case, on August 1, 2022, the arbitration proceedings related to Jai Sai Baba LLC, Dipesh Patel, and MDPD13 Investments, LLC, and Choice commenced. (E.D. Pa., ECF No. 33). On August 24, 2022, those arbitration proceedings concluded. (E.D. Pa., ECF No. 35). The arbitrator issued his final decision on January 12, 2023, finding in favor of Choice. (E.D. Pa., ECF No. 40). Twenty days later, on February 1, 2023, Choice filed a status report representing the following to Judge Leeson:

> On January 12, 2023 in the Jai Sai Baba LLC and Dipesh Patel arbitration, the Arbitrator dismissed all of Claimants' claims and awarded Defendants with a sum of $645,770.43 in attorneys' fees, expert costs, arbitration fees, and other costs. The award also included the administrative fees of the American Arbitration

3

>Association in the amount of $8,250.00 and the compensation of the Arbitrator in the amount of $58,590.00 are to be borne by the Claimants. The Claimants were required to jointly and severally reimburse Defendants $29,295.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Defendants. Defendants filed an application for confirmation of the award on January 20, 2023.[3]

(*Id.*). Noticeably absent from the report to Judge Leeson was any specific reference to the fact that Choice sought confirmation of the arbitration award in the United States District Court for the District of Maryland. (*Id.*).

Choice has continued to file monthly status reports related to pending arbitration proceedings, including the most recent status report on August 1, 2023. (*See, e.g.*, E.D. Pa., ECF Nos. 41-46, 48).

Also, notably, on July 28, 2023, plaintiff Highmark Lodging, LLC filed a motion to confirm an arbitral award, which Choice opposed. (E.D. Pa., ECF Nos. 47, 49-50). On August 22, 2023, Judge Leeson issued an order related to that motion, placing the case on the "civil suspense docket" because the "[c]ourt is unable to decide the [m]otion to [c]onfirm **at this time**." (E.D. Pa., ECF No. 51) (emphasis added). Judge Leeson also ruled that once all arbitration concludes he would "retain jurisdiction over the case and shall return it to the [c]ourt's active docket once the case is ready to proceed to disposition," so that he could resolve all pending matters. (*Id.*). Judge Leeson further ordered Choice to continue filing the monthly status reports. (*Id.*).

### B. The District of Maryland Litigation

On January 19, 2023, i.e., seven calendar days and five business days after the arbitrator issued his final decision, Choice commenced the District of Maryland Litigation, seeking to have this Court confirm its arbitral award against the Respondents. (ECF No. 1).

---

[3] The record in the District of Maryland Litigation reflects the fact that Choice filed its application for confirmation of arbitral award on January 19, 2023 not January 20, 2023. (*See* ECF No. 1).

On February 12, 2023, the Respondents filed an opposition to the application for confirmation of the arbitral award. (ECF No. 14). On the same day, the Respondents filed: (1) the Motion, seeking to have the case transferred to the Eastern District of Pennsylvania. In support of the Motion, Respondents rely in part upon 28 U.S.C. § 1404; and (2) a motion to vacate the arbitral award. (ECF Nos. 15, 16).

Petitioners have filed an Opposition to the Motion and an opposition to Respondents' motion to vacate the arbitral award. (ECF Nos. 29, 31). On March 21, 2023, Respondents filed their Reply in support of the Motion. (ECF No. 41). On the same day, Respondents filed a reply in support of the motion to vacate the arbitral award. (ECF No. 42).

## II.   CHANGE OF VENUE

A motion to change venue is governed by 28 U.S.C. § 1404 ("Section 1404"), which sets forth the factors a court shall consider when determining whether to retain or transfer a case. Pursuant to Section 1404(a), a court will consider the following factors: (1) the plaintiff's choice of venue; (2) the convenience of a particular venue to the witnesses; (3) the convenience of a particular venue to the parties; and (4) the interests of justice (hereinafter the "Traditional Factors"). *See Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436, 448 (4th Cir. 2015); *Kendus v. USPack Servs. LLC*, Civ. No. SAG-19-496, 2020 WL 1158570, at *2 (D. Md. Mar. 10, 2020) (labeling the Section 1404 factors as the "traditional factors"). Generally, a plaintiff's choice of venue is entitled to "substantial weight." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444. However, the "decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Brock v. Entre Comput. Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991) (decision to transfer or not transfer a case is reviewed

under an abuse of discretion standard); *see also Trustees of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 443 (same).

### III. THE LAW—FIRST-TO-FILE RULE

When a party files a motion pursuant to Section 1404 seeking transfer to a venue where there is related, ongoing litigation, a court will consider the application of the "First-to-File" rule ("the Rule"). *See Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435 (D. Md. 2018).

In a typical case, the Rule "is implicated when multiple suits are filed in different federal courts upon the same factual issues, [and in such circumstance] the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982). The Rule is a general case management principle intended to ensure that there is "comity" among the federal courts, i.e., that the same parties and same issues are not presented in multiple courts and are not inefficiently using judicial resources. *See Glodek v. Richardson*, Civ. No. GJH-19-2115, 2020 WL 263476, at *2 (D. Md. Jan. 16, 2020) (the Rule is meant to preserve comity when two cases substantially overlap); *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688 (D.S.C. 2007) (same). Put another way, the Rule ensures that judicial resources are not wasted by separate courts presiding over "duplicative litigation." *See Motley Rice, LLC*, 518 F. Supp. 2d at 697 (the Rule is meant to preserve comity and avoid duplicative litigation which the court defines as cases "in which there are no significant differences between the claims, parties, and available relief in the two suits") (internal citation omitted).

When determining whether the Rule applies, the court resolving a motion to transfer will analyze three factors: (1) the chronology of events, i.e., was the litigation first filed in the

6

transferring court or in the court the moving party asserts is the proper venue; (2) the identity of the parties in each case; and (3) the similarity of the issues in each case. *See Kendus*, 2020 WL 1158570, at *2; *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2009). Importantly, though, the Rule does not require that the parties or issues be identical, only that the cases have "substantial overlap" in these areas. *Kendus*, 2020 WL 1158570, at *3. Generally, if a court finds that the litigation was first filed in a different court, and that there is substantial overlap between the two cases, the transferring court will apply the Rule and transfer the case. *Id.*

However, the Rule "yields to the interests of justice," and will not be applied when a court finds that "compelling circumstances support[] its abrogation." *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330 (D. Md. 2011) (internal citation omitted). Examples of "compelling circumstances" include: (1) bad faith on the part of the party seeking transfer; (2) anticipatory litigation; and (3) forum shopping.

Relatedly, a court may decline to apply the Rule where the Traditional Factors outlined in Section 1404, "weigh[] in favor of the second-filed court's continued exercise of jurisdiction over the second-filed suit." *Kendus*, 2020 WL 1158570, at *3 (citing *Pfizer, Inc. v. Mylan, Inc.*, Civ. No. IMK-09-79, 2009 WL 10270101, at *2 (N.D. W. Va. Nov. 20, 2009)). As detailed, *supra*, these factors include: (1) the plaintiff's choice of venue; (2) witness convenience; (3) convenience of the parties; and (4) the interests of justice. 28 U.S.C. § 1404; *see also Trustee of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444. However, even if the Traditional Factors weigh against the application of the Rule, the judicial system's interest in preserving comity should not be "disregarded lightly." *See Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 900 (D. Md. 2008) (citing *Church of Scientology v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir.

1979)). Therefore, the Traditional Factors should not prevent a court from applying the Rule unless it finds that the interests pertinent to the Traditional Factors outweigh the interests in comity, e.g., all the witnesses familiar with a particular case live in the state where the second filed litigation is taking place. *See Gibbs v. Haynes*, 368 F. Supp. 3d 901, 919 (E.D. Va. 2019) (declining to apply the Rule where "witnesses familiar with [p]laintiffs' claims live in Virginia and that [p]laintiffs do not know of any person in Vermont who could act as a witness in this case").

## IV. DISCUSSION

In the Motion, the Respondents contend that this case should be transferred to the Eastern District of Pennsylvania for two reasons: (1) pursuant to the Federal Arbitration Act ("FAA") a "court that compels arbitration retains jurisdiction" over subsequent proceedings; and (2) litigation pertaining to the "same parties and subject matter" is pending in the Eastern District of Pennsylvania, which means that the Rule requires transfer. (Motion, pp. 4-5, 6-8).

In the Opposition, the Petitioners assert that transfer is not appropriate because: (1) the FAA permits a party to seek court approval of an arbitration award in "the district where such award was made"; and (2) the Rule does not support transfer because there is no risk of duplicative litigation and "compelling circumstances" do not support transfer. Relatedly, Petitioners assert that the Traditional Factors support the case remaining in Maryland. (Opposition, pp. 5-7, 10-12).

### A. The Federal Arbitration Act Does Not Require a Court that Compels Arbitration to Preside Over Subsequent Proceedings

The Court finds unavailing Respondents' contention that the FAA sets forth a bright-line rule that a court that compels arbitration must preside over subsequent proceedings. First, the Court has reviewed the case law relevant to this matter cited by Respondents, including the following: *McCormick v. Am. Online, Inc.*, 909 F.3d 677 (4th Cir. 2018); *Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017); *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1227 (10th Cir. 2021);

*Quezada v. Bechtel OG & C. Constr. Servs., Inc.*, 946 F.3d 837, 843 (5th Cir. 2020); *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 386 (2d Cir. 2016); *Nesbitt v. Mid-Atlantic Builders of Davenport, Inc.*, 283 A.3d 743, 745 (Md. Ct. Spec. App. 2022). Upon review of these cases, the Court finds that they do not support Respondents' argument, as they principally relate to a court's ability to establish or retain jurisdiction over a party's motion to confirm or vacate an arbitral award. None of these cases, however, support the Respondents' broad contention that a court that compels arbitration must preside over subsequent proceedings.

Second, as Choice correctly asserts, the Supreme Court has held that the FAA is flexible as to where a party may bring an application to confirm, vacate, or modify an arbitration award. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000). *In Cortez*, the Supreme Court held that a party may file a post-arbitration application "either where the award was made or in any district proper under the general venue statute." *Id.*; *see also Clear Fin. Tech. Corp. v. I&L Distrib. Inc.*, Civ. No. MKV-22-550, 2023 WL 137867, at *1 (S.D.N.Y. Jan 9, 2023) (same). As such, the FAA does not require Choice to have brought the application to confirm the arbitral award in the Eastern District of Pennsylvania. Accordingly, the Respondents' argument for transfer predicated on the FAA is denied.

**B. Transfer to the Eastern District of Pennsylvania**

The Respondents aver that the Court should apply the Rule and transfer the case to the Eastern District of Pennsylvania because: (1) "the first filed action involving the same parties and the subject matter of this dispute clearly was in the Eastern District of Pennsylvania"; and (2) neither compelling circumstances nor the Traditional Factors weigh against the application of the Rule. (Motion, pp. 6-8). The Petitioners counter that the Rule does not warrant the transfer of the instant dispute to the Eastern District of Pennsylvania for the following reasons: (1) the parties

9

agreed to arbitrate this dispute in Maryland, which demonstrates the parties' preferences as to the appropriate venue; (2) convenience and judicial economy, i.e., the Traditional Factors, do not support transferring this matter based on the Rule. (Opposition, pp. 10-12).

The Court finds instructive *Hypower, Inc. v. SunLink Corp.*, Civ. No. TEH-15-740, 2014 WL 1618379, at *1-4 (N.D. Cal. Apr. 21, 2014). In *Hypower*, the United States District Court for the Northern District of California ("Northern District of California") considered whether it should transfer the case to the United States District Court for the Southern District of Florida ("Southern District of Florida"). On May 4, 2012, the plaintiff Hypower, Inc. ("Hypower") asserted breach of contract, tortious interference with contract, and negligent misrepresentation claims against defendant SunLink, Corp. ("SunLink") in Florida state court. On June 6, 2012, SunLink removed the case to the Southern District of Florida. Thereafter, SunLink filed a motion to compel arbitration, which the Southern District of Florida court granted. Upon granting the motion, that court **stayed** the proceedings and directed the parties to commence arbitration in San Francisco, California. *Hypower*, 2014 WL 1618379, at *2-3 (emphasis added). After arbitration concluded, on February 18, 2014, Hypower filed a petition to vacate the arbitration award in the Northern District of California. In response, SunLink filed a motion to transfer the case to the Southern District of Florida pursuant to the Rule. The Northern District of California court analyzed the factors pertinent to the Rule and found that: (1) the litigation was first filed in the Southern District of Florida; (2) the parties in the Southern District of Florida litigation were the same as the parties in the Northern District of California litigation; and (3) both cases involved the same underlying factual dispute, i.e., the contractual and misrepresentation claims, and the validity of the arbitration award. In addition, the court found that neither party had engaged in forum shopping, demonstrated bad faith, or filed an anticipatory suit and therefore "compelling circumstances" did not support

the abrogation of the Rule. Thus, the court transferred the case to the Southern District of Florida. *Hypower*, 2014 WL 1618379, at *2-4; *compare Hypower*, 2014 WL 1618379, at *3-4 *with Tesla Motors, Inc. v. Balan*, Civ. No. HSG 21-9325, 2022 WL 2954934, at *1-2 (N.D. Cal. July 26, 2022) (declining to apply the Rule where first-filed action was permanently **closed** and not **stayed**).

In this case, too, the Court finds that an analysis of the various factors relevant to the Rule weighs in favor of this Court transferring the case to the Eastern District of Pennsylvania.

First, the Court finds that the Eastern District of Pennsylvania Litigation was initiated on June 12, 2020—nearly three years before the initiation of the District of Maryland Litigation. (*Compare* E.D. Pa., ECF No. 1 *with* ECF No. 1). The Court further finds that there is "substantial overlap" between the two cases in terms of the identities of the parties. The Petitioners in the District of Maryland Litigation are the defendants in the Eastern District of Pennsylvania Litigation. Also, Respondent Jai Sai Baba, LLC is a plaintiff in the Eastern District of Pennsylvania Litigation. Although Respondents Dipesh Patel and MDPD13 Investments, LLC are not plaintiffs in the Eastern District of Pennsylvania Litigation, Respondent Dipesh Patel is the sole owner of Respondent Jai Sai Baba, LLC, and a partial owner of Respondent MDPD13 Investments, LLC. (*See* ECF No. 1, p. 2). Thus, there is substantial overlap between the parties in the District of Maryland Litigation and the Eastern District of Pennsylvania Litigation because three of the five entities in the District of Maryland Litigation are also party to the Eastern District of Pennsylvania Litigation. The parties need not be "identical," in order for there to be a "substantial overlap." *See Kendus*, 2020 WL 1158570, at *3 (transfer appropriate to venue of first-filed case because of "substantial overlap" between the parties in each case despite parties not being identical); *see also Victaulic Co. v. E. Indus. Supplies, Inc.*, Civ. No. JMC-13-1939, 2013 WL 6388761, at *3 (D.S.C.

Dec. 6, 2013). Thus, an analysis of this factor weighs in favor of the Court applying the Rule and transferring the case.

Second, the Court finds that the District of Maryland Litigation and the Eastern District of Pennsylvania Litigation both principally relate to the same underlying factual dispute, namely, the RICO, contractual, and fraud claims related to the Franchise Agreements. (*Compare* E.D. Pa., ECF No. 6 *with* ECF No. 1 *and* ECF No. 1-3, pp. 3-5, 7-9). Put another way, both cases are intimately related to and stem from the Franchise Agreements and the factual content therein. The amended complaint filed in the Eastern District of Pennsylvania Litigation is replete with factual allegations related to the Franchise Agreements including: (1) "Choice and CHOC conspired to fraudulently represent to Franchisees that CHOC was a good faith representative of their interests in order to induce them into entering the [Franchise] Agreements and acquire from them a monthly association fee;" (2) "Franchisees were fraudulently induced to enter into the [Franchise] Agreements;" and (3) "[i]n its performance of the Franchise Agreements, Choice routinely violates its duty of good faith and fair dealing with its Franchisees." (*See, e.g.*, E.D. Pa., ECF No. 6, ¶¶ 316, 320, 365, 372, 379). The arbitration decision, too, which is the subject of the Petitioners' application to confirm arbitral award, is premised on an analysis of the Franchise Agreements and facts related thereto. (*See, e.g.*, ECF No. 1-3, pp. 3-5, 7-9). Therefore, analysis of this factor also weighs in favor of the Court applying the Rule and transferring the case.

Third, the Court finds it in the interests of justice to transfer the case, and there are no "compelling circumstances" present in the District of Maryland Litigation that would lead the Court to decline application of the Rule. *LWRC Intern.*, 838 F. Supp. 2d at 337-338. Nowhere in the record, is there any indication that the Respondents have engaged in forum shopping,

demonstrated bad faith, or filed an anticipatory lawsuit.[4] Accordingly, analysis of the Rule supports transfer on these bases.

Fourth, the Court does not find that analysis of the Traditional Factors supports the Court ignoring the Rule. The District of Maryland Litigation pertains to the approval of an arbitral award. To resolve the matter, as the Respondents correctly argue, the presiding judge will only need to consider the arbitration record and the Franchise Agreement related thereto, so there are no witnesses who would need to testify at a hearing. The Court further finds that the parties are not going to be inconvenienced by the case being transferred back to the forum where the underlying dispute arose. The Court further holds that because there is ongoing litigation in the Eastern District of Pennsylvania, including the motion to confirm an arbitral award against Choice (*see* E.D. Pa., ECF No. 47), Choice will not be inconvenienced by Judge Leeson resolving the instant application to confirm the arbitral award. Of the Traditional Factors, the only factor that weighs in favor of the abrogation of the Rule is the Petitioners' choice of venue.[5] However, the Petitioners' choice of venue, though "entitled to substantial weight, [] does not outweigh interests of comity." *Kendus*, 2020 WL 1158570, at *3. In sum, analyzing all of the Traditional Factors does not lead this Court to decline application of the Rule.

Fifth, this Court finds that there is a strong judicial interest in preserving comity. An analysis of the procedural history of the Eastern District of Pennsylvania Litigation and the District

---

[4] Also, the Petitioners do not in any way argue that Respondents have acted in bad faith, forum shopped, or filed an anticipatory suit. In effect, then, the Petitioners concede this point.

[5] Related to this matter, Petitioners also argue that the parties' agreement to arbitrate the dispute in Maryland operates as a "forum selection clause," which demonstrates that the case should remain in the District of Maryland. (Opposition, p. 11). In support of this contention, Petitioners cite *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630 (1985), in which the Supreme Court held that an agreement to arbitrate in a particular forum can operate as a "specialized kind of forum-selection." *Id.* at 630-31. The Court finds this argument unavailing because the Supreme Court's ruling has no relevance to the instant dispute. In *Mitsubishi*, the Supreme Court was determining whether it should enforce an arbitration agreement in the context of antitrust litigation. *Id.* The Supreme Court did not, however, make any findings relevant to Rule or its application in the arbitration context.

of Maryland Litigation weighs strongly in favor of the Court applying the Rule and transferring the case.  As was the case in *Hypower*, the Eastern District of Pennsylvania Litigation still remains pending before another federal court, namely Judge Leeson granted the motion to compel arbitration, then later **stayed** proceedings rather than close the case. (*See* E.D. Pa., ECF Nos. 13-14; *see also* ECF No. 51 (placing case on civil suspense docket but specifically retaining jurisdiction)). *See also Hypower*, 2014 WL 1618379, at *2-3.  Next, several other facts also support the Court's finding that Judge Leeson clearly intends to retain jurisdiction. For instance, a motion to confirm an arbitral award, which has been opposed by Choice, is currently before Judge Leeson. Judge Leeson's order clearly says that he would not resolve the motion "**at this time**." (*See* E.D. Pa., ECF No. 51) (emphasis added). That order does not say he will not resolve the motion because it is more appropriately filed in another jurisdiction. Judge Leeson further held that he retained jurisdiction over the case and would return the case to the active docket once all arbitration matters were concluded so that he could bring the Eastern District of Pennsylvania Litigation to resolution. (*Id.*). Next, Judge Leeson still requires the submission of monthly status reports, which the parties continue to provide. (*See* E.D. Pa. ECF Nos. 48, 51). Accordingly, there is nothing in any of Judge Leeson's orders that suggests that he intended to divest himself of the ability to resolve any and all issues related to the Franchise Agreements. Put another way, it seems clear that Judge Leeson expects to resolve all matters or issues that arise in the case over which he still presides. Therefore, transfer is appropriate.

Finally, the Court briefly notes the following. Rather than giving Judge Leeson the ability to decide how to resolve post-arbitration litigation, Choice, a **mere seven days** after the conclusion of arbitration, filed an application to confirm the arbitral award in the District of Maryland. (ECF No. 1). Notably, the Petitioners elected to file such application in this Court prior to the submission

of a status report to Judge Leeson. As a result, Judge Leeson was deprived of the opportunity to provide direction to the parties on how to proceed with post-arbitration litigation. In addition, when the Petitioners did provide Judge Leeson with their monthly status report, the report generically stated that they had "filed an application for confirmation of the award on January 20, 2023." (E.D. Pa., ECF No. 40). Nowhere in the status report do the Petitioners clearly represent where they filed an application for confirmation of the arbitral award. Thus, the Petitioners failed to inform Judge Leeson that they availed themselves of another court's judicial resources. The Court finds that these actions, and the clear directive provided to the parties by Judge Leeson, too, weigh in favor of applying the Rule. Next, the Court has reviewed Choice's opposition to E.D. Pa. plaintiff Highmark Lodging, LLC's motion to confirm arbitral award. In that pleading, Choice asserts "that there are statutory and common law bases to overturn the Award." (E.D. Pa., ECF No. 50). However, at no point in the pleading does Choice assert that the Eastern District of Pennsylvania was an inappropriate venue for Highmark Lodging, LLC to seek confirmation of the arbitral award. (*Id*.). This fact further supports this Court's ruling that the Eastern District of Pennsylvania is the appropriate venue to resolve the arbitration dispute currently pending in this Court.

V.     **CONCLUSION**

In sum, the Court finds the Rule applies to the District of Maryland Litigation, and that neither compelling circumstances nor the Traditional factors weigh against the application of the Rule. In addition, the Court finds that the interests of justice further weigh in favor of applying the Rule, as Judge Leeson has held that he has jurisdiction over matters related to the Franchise Agreements, including motions to confirm arbitration awards.

Accordingly, the Motion is **GRANTED,** and the District of Maryland Litigation shall be transferred to the Eastern District of Pennsylvania. The Clerk of the Court is directed to **CLOSE** the case.[6]

A separate order follows.

Dated:  August 25, 2023                                    /s/
The Honorable Gina L. Simms
United States Magistrate Judge

---

[6] Also pending before this Court are the following: (1) Respondents' motion to vacate arbitral award (ECF No. 16); (2) Petitioners' motion to seal (ECF No. 33); and (3) Respondents' motion to seal (ECF No. 43). Because the Court finds that transfer is appropriate, the Court declines to resolve these motions. *See Wye Oak Tech, Inc. v. Republic of Iraq*, 666 F.3d 205, 209 (4th Cir. 2011) ("'[T]he transferor court—and the appellate court that has jurisdiction over it—loses all jurisdiction over the case and may not proceed further with regard to it.'") (citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3846 (4th ed. 2007)).